United States District Court
Southern District of Texas
**ENTERED**
September 30, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Ann L. Glasgow-McCall, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:22-cv-02937 |
| Harris County, *et al.,* | § § § | |
| *Defendants.* | § § | |
| | § | |

## MEMORANDUM AND ORDER

This is an employment dispute. Plaintiff Ann L. Glasgow-McCall ("Deputy Glasgow") filed a motion for partial summary judgment on her claims that she was wrongfully denied a promotion because of her national origin, race, sex, or age. Dkt. 78. Defendant Harris County cross-moved for summary judgment on all claims, Dkt. 81, as did Defendants Constable May Walker ("Constable Walker"), Captain Floyd Davis ("Captain Davis"), Sergeant Michael Calvin ("Sergeant Calvin"), and Sergeant Jared Lindsay ("Sergeant Lindsay") (collectively with the other individuals, "Precinct Defendants"), Dkt. 82. After carefully considering the motions, responses, Dkt. 83, 87, 88, replies, Dkt. 84, 89, 90, the record, and the applicable law, the Court denies Deputy Glasgow's motion for partial summary judgment (Dkt. 78) and grants Defendants' motions for summary judgment (Dkt. 81 & 82).

## Background

Deputy Glasgow worked for Harris County as a deputy constable with the Precinct 7 Constable's Office. Dkt. 66 at 3. She served in that role from March 2015 until her termination in October 2022. *Id.* at 9. She alleges discrimination, hostile workplace environment, and retaliation based on her sex (female), age (over 40), race (Black or African American[1]), national origin (West Indian/Caribbean), and disability under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), and the Texas Labor Code. She also alleges violations of the Family and Medical Leave Act ("FMLA").

## I.    Factual background

### A.    Alleged harassment

In December 2018, Deputy Glasgow began working the Toll Road Division night shift under Sergeant Lindsay's supervision.[2] Dkt. 78-3 at 4 (PX-3 to Glasgow's motion). Sergeant Lindsay allegedly harassed her by telling her she was sent to her position as a "last resort" and by instructing Deputy

---

[1] Deputy Glasgow does not affirmatively state her race. She refers to comparators of a different race from her as "non-Black/West Indian/Caribbean," Dkt. 88 at 16, or "non-African American/West Indian-Caribbean," *id.* at 17.

[2] The prefixes "PX-," "HC-X-" and "PD-X-," used in parentheticals, refer to Deputy Glasgow's, Harris County's, and Precinct Defendants' exhibits, respectively.

Quinton Goodwill to tell her she was not "cut out for" the Toll Road Division. Dkt. 87-4 at 11, 13 (PX-3 to Precinct Defendants' motion).

Around June 2019, Deputy Glasgow says she complained about Sergeant Lindsay's behavior to Captain Davis, who took no action in response. *Id.* at 14-15. Deputy Glasgow also says she complained to Sergeant Marcus Pattum who reported the complaint to Chief Lionel Aaron. *Id.* at 16.

In 2019 or 2020, Deputy Glasgow was reassigned to the Toll Road Division's evening shift under Sergeant Edward Scott's supervision. Dkt. 87-3 at 6 (PX-2 in response to Precinct Defendants' motion). She alleges that, even though Sergeant Lindsay was no longer her supervisor, he subjected her reports to "undue scrutiny" by "kicking them back." Dkt. 87-4 at 18 (PX-3). He also scolded her for completing a report in her assigned vehicle. *See* Dkt. 87-9 (PX-8). And on October 19, 2020, Sergeant Lindsay "falsely accused" her of leaving a patrol vehicle unattended and idling. Dkt. 87-11 at 2 (PX-10). Deputy Glasgow filed a written complaint about Sergeant Lindsay's behavior with Captain Davis in 2020. *Id.*

Deputy Glasgow also accuses various officers of making disparaging comments. Sergeant Calvin and Deputy Fisher allegedly referred to her as "Bahama Mama" in June 2021. Dkt. 87-4 at 24-25 (PX-3). Around July or August 2021, Sergeant Calvin told her she came from a "third world country." *Id.* In a text message on September 14, 2021, he referred to another female

employee as a "d\*cksucker," called Deputy Glasgow a "border jumper," and said, "U r a immigrant." Dkt. 88-16 at 2-3 (PX-15 to response to Harris County's motion). Deputy Glasgow also asserts that, in May 2022, Sergeant Calvin made a comment about the "nasty" food eaten by West Indian/Caribbean people in front of Captain Davis, who did nothing in response. Dkt. 88-4 at 41 (PX-3).

### B.    January 2022 reprimand

In January 2022, Deputy Glasgow was reprimanded for misidentifying a stolen vehicle and drawing her weapon. *See* Dkt. 87-19 at 2 (PX-18 to response to Precinct Defendants' motion). The other deputy on scene, Leslie Williams, an African American male, was not reprimanded. *See* Dkt. 87-4 at 33 (PX-3). Defendants contend that this is because Deputy Williams was the backup, whereas Deputy Glasgow was the primary officer on the scene. Dkt. 82-9 at 14-15 (PD-X-H).

### C.    Denials of transfer requests

In September 2018, Deputy Glasgow submitted a request for transfer to the Domestic Violence Unit, which was rejected. Dkt. 78-2 at 2 (PX-2 to Glasgow's motion). Several months later, Constable Walker transferred two African American women, Deputies Denetria Clark and Jocelyn Kang, to open positions in the Domestic Violence Unit. Dkt. 87-42 at 2 (PX-41 to response to Precinct Defendants' motion; Deputy Clark's transfer, effective December 8,

2018); Dkt. 87-3 at 4-5 (PX-2 to response to Precinct Defendants' motion; noting Deputy Kang's transfer on March 4, 2019).

In December 2020, Deputy Glasgow emailed Constable Walker requesting to be considered for open positions in the Civil Division but was not transferred. Dkt. 78-6 at 2 (PX-6, Glasgow's motion). In August 2021, Deputy Glasgow applied again for a transfer to the Domestic Violence Unit. Dkt. 78-2 at 2 (PX-2). She did not receive the transfer. *Id.* The next year, Constable Walker hired two African American female officers who were less than 40 years of age for open positions in the Domestic Violence Unit: Shemekia Byrd (in March 2022) and Jazmyn King (in June 2022). Dkt. 87-25 at 2 (PX-24 to response to Precinct Defendants' motion), 87-29 at 2 (PX-28).

### C.    Denial of a training opportunity

In January 2022, Deputy Glasgow was selected to attend a class to become an Accident Reconstructionist. Dkt. 87-22 at 3 (PX-21). Her request to take time off to attend the training was denied because there were not enough personnel to cover her shift. Dkt. 87-23 at 3 (PX-2). Deputy Glasgow was told that she would be placed at the "top of the list" for the next class. *Id.*

### D.    FMLA requests and termination of employment

In January 2022, Deputy Glasgow requested FMLA leave to care for her mother from February to April 2022. Dkt. 87-4 at 40 (PX-3). Constable Walker denied her request but allowed her to take two weeks of personal leave. *Id.*

5

On June 26, 2022, Deputy Glasgow sustained serious injuries in a car accident. Dkt. 87-30 at 3 (PX-29 to response to Precinct Defendants' motion). On August 29, 2022, Deputy Glasgow was approved for FMLA leave dating back to June 26, 2022. *See* Dkt. 82-3 at 3 (PD-X-C). But Deputy Glasgow's FMLA leave was exhausted on October 20, 2022. *See* Dkt. 88-34 at 2 (PX-33 to response to Precinct Defendants' motion). Because she did not return to work, she was terminated on October 27, 2022. *See id.*

## II.   <u>Procedural history</u>

On May 13, 2022, Deputy Glasgow dual-filed her first charge of discrimination with the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC"), asserting she was discriminated against based on her national origin and sex. *See* Dkt. 88-26 at 4. (PX-25 to response to Harris County's motion). In that EEOC charge, Deputy Glasgow complained about denials of promotion and training opportunities, the 2022 reprimand, and Sergeant Calvin's derogatory comments. *Id.* She received a "right-to-sue" letter from the EEOC on June 2, 2022. *Id.* at 3.

On August 29, 2022, Deputy Glasgow filed this suit, initially without an attorney. Dkt. 1. Her original complaint and the first amended complaint, filed about two weeks later, assert discrimination based on national origin and

sex under Title VII and the Texas Labor Code, Chapter 21 (the "Texas Commission on Human Rights Act"). *See* Dkt. 1 at 3, 8; *see also* Dkt. 5 at 3, 8.

While that suit was pending, Deputy Glasgow dual-filed a second EEOC charge on August 15, 2023, asserting wrongful termination because of her disability and retaliation for filing her initial EEOC charge in 2022. *See* Dkt. 87-35 at 2 (PX-34 to response to Precinct Defendants' motion). She filed an amended charge on January 26, 2024, adding age, national origin, and sex as discrimination theories. Dkt. 87-36 at 5 (PX-35). She received a right-to-sue letter from the EEOC on May 14, 2024. *Id.* at 3-4.

On August 19, 2024, Deputy Glasgow filed a second suit in state court, which Defendants removed to this Court. *See* Dkt. 61 at 2. This Court consolidated the new suit with Glasgow's original suit. *See* Dkt. 64. By that point, Deputy Glasgow had retained counsel to represent her. *See* Dkt. 33 (attorney's November 15, 2023 notice of appearance).

Because of the consolidation, this Court ordered Deputy Glasgow to file a new and consolidated amended complaint. *See* Dkt. 64 at 4-5. Deputy Glasgow did so on October 18, 2024. Dkt. 66. Her third amended complaint included, for the first time, allegations that Defendants violated the ADA and ADEA. *See* Dkt. 66 at 16-17, 17-18.

After discovery closed, Deputy Glasgow filed a motion for partial summary judgment on her failure-to-promote discrimination claims. Dkt. 78.

7

Both Harris County and Precinct Defendants moved for summary judgment. Dkt. 81, Dkt. 82.  Each side filed responses to the other's motion, Dkt. 83, 87, 88, and replies in support of their own motions, Dkt. 84, 89, 90.  All motions are ripe for resolution.

## Legal standard

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material if the issue it addresses "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (quotation omitted).  "[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party …." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001).

In addition, courts must credit all reasonable inferences from the evidence, without "weigh[ing] evidence or mak[ing] credibility findings." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

## Analysis

## I.    Many of Deputy Glasgow's claims are barred as unexhausted or untimely.

Defendants argue that many of Deputy Glasgow's claims, including several on which she moved for partial summary judgment, are barred by limitations or lack of administrative exhaustion.[3]  *See* Dkt. 81 at 12, Dkt. 82 at 11-12, Dkt. 83 at 11-14 (response to Deputy Glasgow's motion).  Each of these contentions is addressed in turn.

---

[3] Deputy Glasgow's Title VII, ADEA and ADA claims against Precinct Defendants are facially barred because those statutes do not provide a basis for liability against an employee's co-workers and supervisors.  *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) (Title VII); *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) (ADEA); *Jones v. Katy Indep. Sch. Dist.*, 2025 WL 816719, at *2 (S.D. Tex. Mar. 13, 2025) ("[C]ourts within the Fifth Circuit have consistently found that individual liability is precluded under the ADA.").  FMLA liability against individuals is also subject to certain constraints.  *See Jones*, 2025 WL 816719, at *3 (analyzing whether an individual qualifies as an "employer" who can be liable under the FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I); applying test from the Fair Labor Standards Act).  But Precinct Defendants do not raise those issues.

**A.**     **Deputy Glasgow did not exhaust her Title VII race discrimination claims, and many other Title VII theories are time-barred.**

Regarding Deputy Glasgow's Title VII claims, Defendants argue that: (1) her race discrimination claim was not administratively exhausted; and (2) her challenges to actions before July 17, 2021 are untimely.  Dkt. 81 at 12, Dkt. 82 at 11-12.  On the exhaustion issue, Deputy Glasgow asserts that race discrimination is related enough to complaints about national origin discrimination that were raised in her EEOC charge.  *See* Dkt. 87 at 22. Deputy Glasgow also relies on two pre-charge inquiries to extend the timeframe of discriminatory acts that satisfy Title VII's limitations period.  *See* Dkt. 88 at 20-21.  For the reasons below, the Court is not persuaded by either of Deputy Glasgow's positions.

1.     Deputy Glasgow's charge did not adequately raise her race discrimination allegations.

Whether Deputy Glasgow exhausted her race discrimination claim depends on the relationship, if any, between that claim and the allegations in her initial EEOC charge.  "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Thomas v. Tex. Dep't of Crim. Just.*, 220 F.3d 389, 395 (5th Cir. 2000).  For this analysis, courts liberally construe the scope of the EEOC charge, "look[ing] slightly beyond [the charge's] four corners, to

its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006).

"In some contexts, national origin discrimination is so closely related to racial discrimination as to be indistinguishable." *Hernandez v. City of Corpus Christi*, 820 F. Supp. 2d 781, 795-96 (S.D. Tex. 2011) (quoting *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981)).  Courts will "treat a national origin discrimination claim as a racial discrimination claim, or vice versa, when the national origin and race may be correlated." *Id.* at 796.  Here, the question is whether Deputy Glasgow's EEOC charge included sufficient facts to put her employer on notice that she might have additional allegations of discrimination based on her race.  *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 879 (5th Cir. 2003).

Deputy Glasgow did not select "race" as her protected class on either her initial or second amended EEOC charge.  *See* Dkt. 87-26 at 4 (first charge), Dkt. 87-36 at 5 (second amended charge).  In her initial EEOC charge, Deputy Glasgow described being reprimanded for drawing her weapon, even though the other deputy at the scene, Deputy Williams—an African American male— was not reprimanded.  Dkt. 87-26 at 4.  That charge also complained about Sergeant Calvin, namely that (1) he said "people of my ethnic's origin eat monkeys and quail"; and (2) he sent a text message calling her "an immigrant hater making reference to my ethnic background." *Id.* at 4-5.

11

There is not a sufficiently close relationship between Deputy Glasgow's national origin (West Indian/Caribbean) and race (African American or Black) to conclude that she has exhausted her administrative remedies with respect to both claims. Her initial EEOC charge identifies a comparator who is also African American or Black, which would not signal the likelihood of a race discrimination claim. Moreover, the charge describes comments made by Sergeant Calvin that refer to Deputy Glasgow's national origin, not her race. It cannot be said that her new race discrimination claim is "indistinguishable" from, and was exhausted by, her national origin discrimination allegations.

Nor can Deputy Glasgow rely on her amended EEOC charge to exhaust her race discrimination claim. That amended EEOC charge complains only of her termination after exhausting FMLA leave and possible retaliation for filing her initial EEOC charge. *See* Dkt. 87-36 at 5. Nothing in that charge hints at race discrimination. Deputy Glasgow's Title VII race discrimination claims are unexhausted, which entitles Defendants to summary judgment.

2. <u>All Title VII allegations about conduct before July 17, 2021 are untimely.</u>

Defendants also dispute the timeliness of Deputy Glasgow's Title VII claims, arguing that she cannot base them on actions before July 17, 2021, *i.e.*, more than 300 days before her initial EEOC charge was filed on May 13, 2022. Dkt. 81 at 12, Dkt. 82 at 11-12. Deputy Glasgow responds that she submitted

online inquiries to the TWC in October 2021 (Dkt. 88-38 at 2, a TWC inquiry transfer notice) and with the EEOC on February 24, 2022 (Dkt. 88-26 at 8-9). According to her, those inquiries constitute a charge that expands the relevant period to either December 25, 2020 (300 days before the TWC inquiry), or April 30, 2021 (300 days before her EEOC inquiry).  Dkt. 88 at 20-21.

Under Title VII, a claimant must file a charge with the EEOC within 300 days of the challenged discrimination.  *See Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003).  A filing can be deemed a "charge" if it meets EEOC's filing requirements and can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)).  "In the Fifth Circuit, this is evidenced by a specific statement requesting remedial action."  *Sambrano v. United Airlines, Inc.*, 707 F. Supp. 3d 652, 674 (N.D. Tex. 2023) (an online inquiry form containing "no such statement" cannot constitute a charge).  Moreover, the EEOC's filing requirements require that the charge be in writing, signed, and verified.  *See* 29 C.F.R. § 1601.9.

Deputy Glasgow has not proffered the October 2021 inquiry submitted to the TWC, which forecloses her reliance on that inquiry to raise a fact issue. And the February 2022 EEOC inquiry does not qualify as a "charge because it includes no specific request for remedial action.  *See* Dkt. 88-26 at 8-9.

Because Deputy Glasgow did not file a qualifying charge until May 13, 2022, her Title VII discrimination claims complaining of conduct before July 17, 2021, are time-barred.  This excludes her reliance on Sergeant Lindsay's alleged harassment (2019 and 2020), and the denials of her requests for transfer to the Domestic Violence Unit (2018) and to the Civil Division in 2020.

### B.    Most of Deputy Glasgow's TCHRA claims are also untimely.

The foregoing analysis limits Deputy Glasgow's parallel claims under the TCHRA.  This is because the TCHRA imposes an even shorter limitations period than Title VII, requiring that a plaintiff "file a complaint with the TWC within 180 days of the alleged discriminatory act ...." *Bunker v. Dow Chem. Co.*, 111 F.4th 683, 686 (5th Cir. 2024) (citing *Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 701 (Tex. App.—Austin 2012, no pet.)).  Yet Deputy Glasgow's allegations encompass actions far outside that window.  *See* Dkt. 81 at 22-23 (Harris County's motion); Dkt. 82 at 9 (Precinct Defendants' motion).

As already concluded, Deputy Glasgow's first qualifying charge was filed on May 13, 2022 and asserted retaliation and discrimination based on national origin and sex.  She cannot pursue TCHRA claims based on conduct more than 180 days earlier, i.e., before November 14, 2021.  This encompasses the training denial and the January 2022 reprimand.

Deputy Glasgow's allegations about retaliatory and discriminatory acts leading up to and including her October 27, 2022 termination are likewise

14

untimely. She did not file her second charge until August 15, 2023. Dkt. 87-35 at 2 (second charge). And she has not adequately briefed any basis for allowing her to reach back more than 180 days before her May 13, 2022 or August 15, 2023 administrative charges. Except for claims arising from the training denial, the FMLA request to care for her mother, and the January 2022 reprimand, all Deputy Glasgow's TCHRA claims are rejected as untimely.

### C. The ADA claims are timely, but the ADEA claims are not.

Defendants raise an analogous limitations argument concerning Deputy Glasgow's age and disability discrimination claims. They focus on her January 29, 2024 amended EEOC charge, which was filed more than 300 days after her termination. *See* Dkt. 81 at 22; Dkt. 82 at 24. Harris County downplays Deputy Glasgow's earlier, August 15, 2023 submission, characterizing it as merely an "[i]ntake questionnaire." Dkt. 89 at 4.

The County's position is unfounded, at least with respect to the ADA claim. Deputy Glasgow's August 15, 2023 filing qualifies as a verified charge; it is an EEOC filing in writing, signed, and verified by Deputy Glasgow. *See* Dkt. 87-35 at 2. That verified charge asserting disability discrimination was filed less than 300 days after her October 27, 2022 termination. Her ADA claims are timely.

Deputy Glasgow did not, however, assert age discrimination until her January 29, 2024 amended charge. *See* Dkt. 87-36 at 5. Charge amendments

that raise a new legal theory do not usually relate back to an original charge of discrimination. *See Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003). An exception arises when the facts supporting both the amendment and the original charge are "essentially the same." *Id.* The key question is whether the first charge included sufficient facts to put the employer on notice about the additional discrimination allegations. *Id.*

Deputy Glasgow's August 15, 2023 charge complains of her termination after exhausting FMLA leave and possible retaliation for filing her initial EEOC charge. Nothing in that charge signaled that she might also have an age discrimination claim. Defendants are entitled to summary judgment on the ADEA claims, which are time-barred.

## II. Deputy Glasgow failed to raise a fact issue on her remaining Title VII theories.

As explained above, the only timely Title VII claims that Deputy Glasgow properly exhausted concern post-July 17, 2021 acts of alleged mistreatment or harassment based on her sex or national origin. *See supra* Part I.A. Those allegations are limited to (1) Sergeant Calvin's derogatory comments; (2) the denial of her August 2021 request to transfer to the Domestic Violence Unit; (3) the denial of her request to attend the Accident Reconstructionist class; (4) the January 2022 reprimand; (5) the denial of her request to take FMLA leave to care for her mother; and (6) her termination.

Deputy Glasgow has failed to raise a genuine issue of material fact that those incidents meet the threshold for sex or national original discrimination, hostile work environment, or retaliation.[4]

## A.    Framework for Title VII claims

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Deputy Glasgow neither argues nor demonstrates that she has direct evidence of discrimination, so her claim is subject to the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

Under that framework, an employee bears the "initial burden" of showing: (1) she is a member of a protected group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) she was treated less favorably than or was replaced by someone outside of her protected class. *See Lee v. Kan. City Southern Ry.* Co, 574 F.3d 253, 259 (5th Cir. 2009). Once the employee establishes a *prima facie* case, the defendant must articulate a legitimate, nondiscriminatory reason for the adverse

---

[4] The same conclusions negate Deputy Glasgow's remaining TCHRA claims which, although narrower in scope (due to the TCHRA's shorter limitations period, *see supra* Part I.B), have the same requirements of proof.

employment action.  *See Frank v. Xerox Co.*, 347 F.3d 130, 137 (5th Cir. 2003).

The burden then shifts back to the employee to produce evidence that the

defendant's articulated reason is pretextual.  *Id.*

### B.    The 2021 denial of a transfer to the Domestic Violence Unit was not an adverse employment action.

What Deputy Glasgow characterizes as a denial of promotion is really

the denial of a transfer.  In her motion for partial summary judgment, Deputy

Glasgow assumes that the denial constitutes an adverse employment action.

*See* Dkt. 78 at 18-19.  Defendants disagree, arguing that those decisions cannot

support a *prima facie* case of discrimination.  Dkt. 81 at 13; *see also, e.g.*,

Dkt. 83 at 15 (generally arguing there is no *prima facie* case); Dkt. 82 at 13.

"It is well established that the denial of a purely lateral transfer is not

an adverse employment action redressable under Title VII."  *Alvarado v. Tex.

Rangers*, 492 F.3d 605, 612 (5th Cir. 2007).   To qualify as an adverse

employment action, the sought-after position must be objectively better.

*See id.* at 614.  Whether a position is objectively better depends on factors like

greater pay, responsibility, advancement opportunities, skill requirements, or

prestige.   *Id.*   This is an "objective inquiry"; the employee's "subjective

impressions as to the desirability of the new position" are not "sufficient to

render the position a promotion."  *Id.*

Deputy Glasgow's only timely theory concerns her request for transfer to the Domestic Violence Unit in August 2021. Because the position she sought was merely another deputy position in that Unit, it was a lateral transfer request. *See* Dkt. 87-4 at 5 (Deputy Glasgow's deposition). Nothing in the record shows, nor does Deputy Glasgow contend, that the requested deputy position is "objectively better" than the same title she held in the Toll Road Division. *See Alvarado*, 492 F.3d at 614. Without an adverse employment action, she cannot meet her *prima facie* burden. Summary judgment is warranted on her denial-of-promotion theory.

### C. The denial of a training course was neither adverse nor discriminatory.

Deputy Glasgow argues that she was wrongfully denied time off to attend an accident reconstruction training course from January 10 to January 21, 2022, despite admittedly being told there were not enough personnel to cover her shift. Dkt. 87 at 15, 23-24; Dkt. 87-23 at 3 (rejection email). She argues this denial was discriminatory because two other Precinct 7 officers, Sergeant Pattum and Deputy Fisher, were allowed to attend the course. *Id.* at 24. She also complains that Deputy Chavez, who worked the same shift as Deputy Glasgow, was allowed to attend a different training course. *Id.* Defendants argue that her contentions are insufficient to make a *prima facie*

case, *see* Dkt. 89 at 6 (Precinct Defendants' reply), Dkt. 90 at 5-6 (Harris County's reply), and the Court agrees.

There is no evidence that the denial of training qualifies as an adverse employment action, the third *prima facie* requirement.  To satisfy that threshold, a denial of training must cause a change in employment status, benefits, or responsibilities.  *See Shakelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406-07 (5th Cir. 1999).  Although Deputy Glasgow declares that she "lost a career advance [sic] opportunity," Dkt. 87 at 24, she submits no proof that her non-attendance of the course affected her employment outcomes. To the contrary, the same email advising her that she could not attend the course noted that she would be placed at the "top of the list" to take the next available class.  Dkt. 87-23 at 3 (email from Captain Davis).  Glasgow's conclusory assertions do not satisfy her burden.

As a further deficiency, Defendants are correct that Deputy Glasgow fails to satisfy the fourth prong of her *prima facie* case, namely, that similarly situated employees outside her protected class were allowed to attend the training class under "nearly identical circumstances."  *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005); Dkt. 90 at 5-6.  That standard is met "when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the

same person, and have essentially comparable violation histories." *Lee v. Kan. City So. Ry.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted).

Deputy Glasgow merely asserts that Sergeant Pattum and Deputy Fisher were able to attend the same training that she was denied. *See* Dkt. 88 at 15. She cites no evidence that those individuals had similar job responsibilities, were granted permission by the same supervisor, or any other circumstance nearly identical to hers. And Deputy Glasgow cannot rely on Deputy Chavez's attendance at *different* training courses on *different* dates than the one she wanted to attend. *Compare* Dkt. 87-24 at 2-3 (approving Deputy Chavez's attendance at Basic Instructor Course from December 13 to 17, 2021, and Intermediate Crime Scene Investigation course from January 24 to 28, 2022), *with* Dkt. 87-22 at 3 (Advanced Accident Investigation course from January 10 to 21, 2024). Deputy Glasgow has not raised a genuine issue of material fact on her training discrimination claim.

**D.   No evidence indicates that Defendants' nondiscriminatory reason for her January 2022 reprimand was pretextual.**

Another of Deputy Glasgow's Title VII discrimination theories concerns her reprimand for misidentifying a stolen vehicle and drawing her weapon while the other deputy present, Deputy Williams, was not reprimanded. Dkt. 88 at 24. According to Defendants, Deputy Glasgow received a reprimand because she was the primary officer on the scene, whereas Deputy Williams

was merely her backup.  Dkt. 89 at 6, Dkt. 90 at 5.  This is legitimate, nondiscriminatory reason that Deputy Glasgow does not attempt to refute.  So summary judgment is warranted even assuming that Deputy Glasgow could make a *prima facie* case that the reprimand was discriminatory.

### E.    Deputy Glasgow has not made a *prima facie* showing that her termination was discriminatory.

The last of Deputy Glasgow's Title VII discrimination theories overlaps with her FMLA claim, which argues that she was wrongfully terminated after exhausting her FMLA leave and failing to return to work.  *See* Dkt. 88 at 23 (Title VII, referencing termination); *id.* at 33 (FMLA).  According to her, at least four male deputies took longer periods of leave yet were allowed to return to their positions.  Dkt. 88 at 27, 33.  Defendants argue that she has no evidence those employees were similarly situated.  Dkt. 81 at 28.

Deputy Glasgow's FMLA leave expired on October 10, 2022, *see* Dkt. 87-34 (termination letter), but her own doctor indicated that she could not return to work until December 31, 2022, *see* Dkt. 81-5 at 3 (October 4, 2022 FMLA certification); *id.* at 4 ("Employee to be incapacitated from 9/30/22 – 12/31/22 due to fracture (head).").  No evidence suggests that the other deputies Deputy Glasgow cites as comparators had fully exhausted their leave hours and were not medically cleared to return when their leave expired.  The lack of adequate comparators defeats her Title VII wrongful termination claim.

**F.    The only timely allegations are not severe or pervasive enough to show a hostile work environment.**

Deputy Glasgow bases her hostile work environment claim on Sergeant Lindsay's pre-July 17, 2021 conduct as her supervisor, Dkt. 87 at 28, and Sergeant Calvin's more recent derogatory statements about West Indian/Caribbean people and women, *id.* at 28-29.   To survive summary judgment, Deputy Glasgow must show that she was subjected to: (1) discriminatory intimidation, ridicule, and insults that are (2) sufficiently severe or pervasive such that they (3) alter the conditions of employment, and (4) create an abusive working environment.  *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000).   This determination considers the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  "[T]he required level of severity of or seriousness varies inversely with the pervasiveness or frequency of the conduct."  *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 442 (5th Cir. 2011).

Deputy Glasgow invokes facts underlying her untimely claims to substantiate a hostile work environment.  Dkt. 88 at 19-20.  Under the "continuing violation" theory, a hostile work environment claim may include

acts outside the limitations period if they are sufficiently related to timely acts. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328-29 (5th Cir. 2009). The continuing violation theory applies where: (1) at least one act contributing to the hostile work environment was timely exhausted; and (2) the untimely acts are sufficiently related to the timely acts. *See Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012). Courts will consider whether the acts involved the same type of harassment from the same offender to determine to determine if they are "sufficiently related." *Lopez v. AT&T Mobility Servs. LLC*, 767 F. Supp. 3d 406, 430 (W.D. Tex. 2025) (citing *Noack v. YMCA of Greater Hous. Area*, 418 F. App'x 347, 351 (5th Cir. 2011)).

There is no link between Sergeant Lindsay's pre-July 2021 instances of alleged harassment and Sergeant Calvin's later statements. Those allegations concern different individuals, and the nature of their conduct is distinct. Whereas Deputy Glasgow contends that Sergeant Calvin made derogatory remarks about her national origin, she complains that Sergeant Lindsay criticized and scrutinized her work while supervising her—acts that have no facial (nor evidentiary) connection to her national origin. Sergeant Lindsay's conduct is not part of a continuing violation and is therefore disregarded.

As for Sergeant Calvin's remarks, they are not adequately pervasive or severe to sustain a hostile work environment claim. Not all harassment, like "simple teasing, offhand comments, and isolated incidents (unless extremely

24

serious)" will affect the conditions of employment. *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quoting *Shepard v. Comptroller of Pub. Accts.*, 168 F.3d 871, 874 (5th Cir. 1999)). The "mere utterance of an … epithet which engenders offensive feelings in an employee" is not sufficient. *Harris*, 510 U.S. at 21. Under Fifth Circuit precedent, sporadic comments—unless particularly egregious—generally do not create a hostile work environment. *Compare, e.g.*, *Shepard,*168 F.3d at 874 (holding that a series of offensive comments and minor physical touching over an almost two-year period was too infrequent and insufficiently severe), *with E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) ("constant[]" comments based on employee's national origin raised a fact issue), *and Faprella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (egregious inquiries about plaintiff's sexual activity two-to-three times per week were sufficiently severe and pervasive).

While Sergeant Calvin's comments were offensive, Defendants are correct that they are not enough to create a hostile work environment. *See* Dkt. 81 at 17 (Harris County's motion), Dkt. 82 at 15 (Precinct Defendants' motion). The comments were sporadic, only four instances during an eleven-month period. *See* Dkt. 87-4 at 24-25, Dkt. 88-16 at 2, Dkt. 88-4 at 41. They were not physically threatening or humiliating, and Deputy Glasgow does not show that they interfered with her job performance.

Sergeant Calvin's statements, while inappropriate, do not rise to the level of a hostile work environment. *See, e.g.*, *White v. Gov't Emps. Ins. Co.*, 457 F. App'x 374, 381 (5th Cir. 2012) (coworkers' three racially derogatory comments were insufficiently severe or pervasive because they were not physically threating or humiliating); *Roberts v. Tex. Dep't of Human Servs.*, 2001 WL 1468757, at *2 (5th Cir. Oct. 31, 2001) (per curiam) (sporadic or isolated comments evincing racial enmity are not enough); *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 293 (E.D. Tex. 1996) (foreperson's statements calling plaintiff "black yankee" or "son" and insulting black political leaders three to five times each year and telling a racial joke, even coupled with co-worker calling plaintiff the n-word, "while not commendable, are not so numerous and opprobrious to constitute a hostile work environment"). This claim fails.

## G.    Deputy Glasgow failed to make a *prima facie* case of retaliation.

Agreeing with Defendants, the Court also concludes that Deputy Glasgow has not made a *prima facie* case of Title VII retaliation based on any post-July 17, 2021 actions. *See* Dkt. 81 at 14; Dkt. 82 at 15-17. The *McDonnell Douglas* burden-shifting framework applies to retaliation claims like hers that are based on circumstantial evidence. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To survive summary judgment, Deputy

Glasgow must make a *prima facie* showing of (1) engagement in activity protected by Title VII, (2) an adverse employment action, and (3) a causal connection between the two. *See Banks v. E. Barton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). "Close timing between an employee's protected activity and adverse action … may provide the causal connection required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citations omitted). When timing is the only evidence offered to establish the causal element, however, the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

One of Deputy Glasgow's theories asserts that she was not promoted and was eventually terminated in retaliation for her filing her initial EEOC charge. *See* Dkt. 88 at 31. This theory is deficient in several respects.

First, Deputy Glasgow failed to show that there was an open position to which she could have been promoted after submitting her May 13, 2022 charge. This negates the notion that she was denied a promotion because of the charge.

Second, there is no evidence that Deputy Glasgow was terminated in October 2022 because of her May 13, 2022 charge. The two events are too remote in time to infer a causal link, and Sergeant Calvin's alleged statement fails to bridge the gap. According to Deputy Glasgow, Sergeant Calvin, after becoming aware of Deputy Glasgow's EEOC charge, told her that another employee had filed an EEOC charge, was terminated, and that the EEOC charge went nowhere. *See* Dkt. 88-4 at 42. But Sergeant Calvin was not involved with Deputy Glasgow's termination. That decision, instead, was made by Constable Walker. *See* Dkt. 81-13 at 5-6 (Walker's deposition); Dkt. 87-34 (termination letter). Nothing links Deputy Glasgow's EEOC charge to her termination.

The same flaws foreclose Deputy Glasgow's reliance on her dishonorable-discharge designation. Dkt. 88 at 31. Again, she merely speculates that the designation was related to her months-earlier EEOC charge. She also ignores that the discharge status was later changed to an *honorable* discharge, which forecloses classifying it as an adverse action. *See* Dkt. 88-37 at 6. She has not substantiated a *prima facie* case of retaliation.

## III.  **Deputy Glasgow has not made a *prima facie* case of FMLA interference.**

Regarding the FMLA claims, Defendants argue, *inter alia*, that (1) the denial of FMLA leave in January 2022 was lawful because Deputy Glasgow was not FMLA-eligible; and (2) her FMLA-interference claim theory premised on her October 2022 termination fails because she received all her FMLA benefits and failed to return to work.[5] *See* Dkt. 81 at 25-28.  The Court agrees.

The FMLA makes it illegal for an employer to "interfere with, restrain, or deny the exercise of" an employee's FMLA rights.  § 2614(a)(1).  To establish a *prima facie* case of FMLA interference, the plaintiff must show: (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her benefits to which she was entitled under FMLA.  *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).  In addition, the plaintiff must show actual prejudice caused by the interference.  *See Downey v. Strain*, 510 F.3d 534, 539-41 (5th Cir. 2007).

Deputy Glasgow complains that Constable Walker denied her request to take FMLA leave from February 2022 to April 2022 to care for her sick mother.

---

[5] The Court's conclusion that Deputy Glasgow failed to make a *prima facie* case that her termination violated Title VII, *see supra* Part II.E, likewise defeats her claim of FMLA discrimination.  She proffered no evidence that any similarly situated employees received more favorable treatment.

Dkt. 88 at 15-16.  Under the FMLA, an "eligible employee" is an employee who was employed "for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C. § 2611(2)(A).  Because Deputy Glasgow had worked only 1,075 hours, she did not meet the eligibility threshold.  *See* Dkt. 82-2 at 3.  There was nothing wrongful about denying FMLA leave that Deputy Glasgow was not entitled to receive.

As for Deputy Glasgow's request to take FMLA leave after her June 2022 accident, she complains that no one told her when her FMLA leave began or ended.  Dkt. 88 at 32-33.  Even if that were true, Deputy Glasgow has not shown that she was prejudiced by the lack of notice.  Her own doctor estimated that she could not return to work until December 31, 2022, Dkt. 81-5 at 2-5, which was months after her FMLA leave expired.  Other evidence reflects that Deputy Glasgow could not work even as recently as mid-2023—as shown by her receipt of long-term disability benefits until June 23, 2023.  Dkt. 81-6 at 5.  So even if Deputy Glasgow had been told that her FMLA leave would expire on October 20, 2022, uncontroverted evidence confirms that she could neither have returned to work at that time nor structured her leave differently to preserve it.  Deputy Glasgow's FMLA interference claims lack merit.

IV.  **Deputy Glasgow cannot establish a *prima facie* case of disability discrimination.**

For her ADA claim, Deputy Glasgow alleges that she requested and was denied light-duty accommodation that other employees receive.  Dkt. 87 at 34.  Harris County aptly notes that Deputy Glasgow has failed to show she was "qualified" for light duty.  Dkt. 28 at 30.

The ADA prohibits discrimination against a qualified individual based on the individual's disability.  42 U.S.C. § 12112(a); *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).  Because there is no direct evidence of disability discrimination, Deputy Glasgow must make a *prima facie* case establishing that (1) she is disabled within the meaning of the ADA, (2) she was qualified for the job, and (3) she was fired on account of her disability.  *See Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 526 (5th Cir. 2022) (citing *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019)).  A qualified individual is an employee "who, with or without accommodation, can perform the essential functions" of their position.  42 U.S.C. § 12111(8).  The plaintiff must show either (1) she could perform the essential functions of the job despite her disability, or (2) that a reasonable accommodation would enable her to perform the essential functions of the job.  *Torres v. Cornerstone Fitness TX, LLC*, 2024 WL 3799464, at *4 (W.D. Tex. Aug. 9, 2024) (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996)).

As noted above, the evidence reflects that Deputy Glasgow was unable to work *at all* until at least December 31, 2022, Dkt. 81-5 at 2-5, or even as recently as June 23, 2023. *See supra* Part III. Deputy Glasgow has not shown she could have performed the essential functions of her job, even with (unspecified) accommodations, when her FMLA leave expired in October 2022. There is no basis for her ADA claim.

## V.    **Deputy Glasgow cannot maintain a Section 1981 or 1983 claim.**

Deputy Glasgow also casts her race-discrimination, hostile work environment, and retaliation claims as violations of 42 U.S.C. §§ 1981 and 1983. *See* Dkt. 66 at 13, 18-20. Defendants have raised numerous challenges to these claims, but the Court opts to resolve only a few.

### 1.    No evidence supports liability against Harris County.

The Section 1981 and Section 1983 claims against Harris County are not actionable. Section 1981 states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. This statute protects individuals from racial discrimination by their employers. *See Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1051-52 (5th Cir. 1998).

Notably, however, violations of 1981 by governmental bodies and officials are actionable only through Section 1983. *Oden v. Okibbeha Cnty.,*

*Miss.*, 246 F.3d 458, 462-63 (5th Cir. 2001) (discussing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731 (1989)).  This means that Deputy Glasgow cannot maintain an independent Section 1981 claim against Harris County because any claim that the County interfered with her right to contract must be brought under Section 1983.  *See id.*; *see also, e.g.*, *Lucenio v. Hous. Indep. Sch. Dist.*, 2022 WL 658838, at *6 (S.D. Tex. Feb. 16, 2022), *adopted by* 2022 WL 658719 (S.D. Tex. Mar. 4, 2022).

As for the Section 1983 claim, Harris County correctly maintains that Deputy Glasgow cannot establish its liability through actions by Precinct 7 actors.  Dkt. 81 at 20-21.  Deputy Glasgow fails to address this issue.

A municipality cannot be held liable under Section 1983 based on a *respondeat superior* theory.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  Instead, establishing municipal liability requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom.  *Id.* (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978)).  Actions of a single Harris County precinct's constable "do not constitute county-wide policy." *Anderson v. Harris County*, 98 F.4th 641, 644 (5th Cir. 2024).

Deputy Glasgow does not show that any official Harris County policymaker committed any of the allegedly wrongful acts.  And binding

precedent holds that Constable Walker is not an official policymaker for the County.  Harris County cannot be liable under Section 1981 or 1983.

### 2.    Deputy Glasgow has not made a *prima facie* case of racial discrimination, hostile work environment, or retaliation.

Precinct Defendants assert that most of Deputy Glasgow's race-discrimination allegations are time-barred, and for the rest, she cannot make a *prima facie* case.[6]  Dkt. 82 at 17-22.  Deputy Glasgow responds that she can make a *prima facie* case of race discrimination, hostile work environment, and retaliation.  Dkt. 87 at 21-31.  The evidence overlaps with much of the analysis above, and the result is the same: Deputy Glasgow failed to meet her burden.

The longest statute of limitations that could conceivably apply is four years,[7] whether under Section 1981 alone, or assuming that Section 1983 provides the sole remedy for redress against Precinct Defendants.  *See Nicholson v. W.L. York, Inc.*, 2024 WL 913378, at *3 (5th Cir. Mar. 4, 2024) ("When a § 1983 claim arises post-contract formation, it is subject to a four-year statute of limitations period under 28 U.S.C. § 1658."); *Rothrock v. Gorman*, 2013 WL 3461913, at *3 (S.D. Tex. July 1, 2013) (applying 42 U.S.C.

---

[6] Precinct Defendants also invoke qualified immunity, further contending that Deputy Glasgow cannot sue them in their official capacities.  *See* Dkt. 82 at 21-23. The Court declines to resolve those issues.

[7] The Court does not resolve whether a two- or four-year limitations applies.

§ 1658(a)'s four-year limitations period to a Section 1983 retaliation claim premised on a Section 1981 violation that became actionable only after 1990).

Because Deputy Glasgow first raised Section 1981 and 1983 claims on January 26, 2024, in her second amended complaint, *see* Dkt. 48 at 14-15, all conduct from January 26, 2020 onward is potentially relevant to her claims.[8] In addition to the acts already addressed under Title VII, that would include: (1) Sergeant Lindsay's alleged harassment occurring after January 26, 2020 and (2) Deputy Glasgow's request for transfer to the Civil Division in 2020. But even this broader array of allegations fails to raise a fact issue.

"The substantive analysis for discrimination claims asserted under both Title VII and § 1981 is virtually identical." *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 851 (citing *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 992 (5th Cir. 2005)). "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996).

Deputy Glasgow's Section 1981 racial discrimination claims arise from the denials of her transfer requests to the Civil Division in 2020 and the Domestic Violence Unit in 2021, the 2022 reprimand, and her termination. But

---

[8] Deputy Glasgow has not adequately briefed any basis for allowing her to reach conduct before January 26, 2020.

as explained above, the transfer denials cannot support recovery because Deputy Glasow has not shown that they constitute an adverse employment action. *See supra* Part II.B. Regarding the 2022 reprimand, Deputy Glasgow has not shown that Defendants' legitimate, nondiscriminatory reason was pretextual.[9] *See supra* Part II.D. And the lack of similarly situated comparators negates her theory that her termination was discriminatory. *See supra* Part II.E. Summary judgment is proper.

Deputy Glasgow's Section 1981 retaliation claims are just as deficient. There is no evidence of an open position to which she was not promoted, no evidence that she was terminated in October 2022 because of her May 12, 2022 charge, and no evidence that her initial dishonorable-discharge designation— which was later changed to an honorable discharge—constituted an adverse action. *See supra* Part II.G.

Deputy Glasgow also failed to show that she was subjected to a racially hostile work environment under Section 1981. That would require *prima facie* proof that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the

---

[9] Notably, the other deputy who was not reprimanded was African American, just like Deputy Glasgow. *See* Dkt. 87-4 at 33. That obviates Deputy Glasgow's theory that she was treated less favorably than others outside her protected class—an element of her *prima facie* burden.

employer knew or should have known of the harassment and failed to take prompt remedial action. *See Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 816, 856-57 (E.D. Tex. 2014) (citing *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 640 (5th Cir. 2014)). Sergeant Lindsay's alleged harassment is irrelevant because nothing suggests that his complained-of actions were race-related. And the Court has already concluded that Sergeant Calvin's sporadic statements were insufficiently pervasive or severe. *See supra* Part II.F. Summary judgment is granted for Defendants on Deputy Glasgow's Section 1981's claims.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Deputy Glasgow's motion for partial summary judgment (Dkt. 78) be **DENIED**.

It is further ORDERED that both Harris County's motion for summary judgment (Dkt. 81) and Precinct Defendants' motion for summary judgment (Dkt. 82) be **GRANTED**.

Signed on September 30, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge